**SHAW v. GREEN & WELHAUSEN et al.**

**No. 9902.**

Court of Civil Appeals of Texas. Galveston.

March 25, 1937.

Rehearing Denied June 3, 1937.

A. J. Lewis and R. F. Spencer, both of San Antonio, for appellant.

H. W. Wallace, of Cuero, for appellees.

PLEASANTS, Chief Justice.

The following statement of the nature and result of this suit is copied in the main from appellant's brief:

This is a suit by appellant in his official capacity against Philip Welhausen, as surviving member of the firm of Green & Welhausen, a partnership composed of William Green and Philip Welhausen, and William D. Green, independent executor of the estate of William Green, deceased, to recover an assessment levied by the commissioner on 130 shares of stock of the Yoakum State Bank of Yoakum, Tex.

The allegations of the petition were, in substance, that the Yoakum State Bank, a state banking corporation under the laws of Texas, with a capital stock of $100,000, divided into 1,000 shares of the par value of $100 each, having its domicile and office in the town of Yoakum, being insolvent, was, on September 5, 1928, closed and taken in charge by him and was being liquidated by him; that immediately upon the closing of such bank he carefully investigated and examined the bank and its financial condition and found it to be insolvent and unable to pay its debts and liabilities; and, by order duly made, levied a 100 per cent. assessment against each and every stockholder owning stock therein and against each and every stockholder who had transferred stock within twelve months prior to the failure.

That on October 3, 1927, and for a long time prior thereto, the partnership firm of Green & Welhausen was the owner of 130 shares of the capital stock of the total par value of $13,000; that on October 3, 1927,

the firm of Green & Welhausen, Philip Welhausen, surviving member of the firm, and William D. Green, independent executor of the estate of William Green, deceased, transferred the 130 shares of stock to the firm of Welhausen & Driscoll, a partnership composed of Philip Welhausen and M. C. Driscoll; that at the time of such transfer there existed debts of the bank largely in excess of the par value of the stock; that this condition of insolvency had existed for a long time prior to the date of closing; that the firm of Welhausen & Driscoll was insolvent, in bankruptcy, and unable to respond to the assessment or any part thereof.

That William Green died on the 10th day of May, 1927, leaving a will wherein William D. Green (appellee) was named independent executor without bond; that said will was duly probated; that upon the death of William Green the assets of the firm were taken in charge by Philip Welhausen as surviving partner and by William D. Green as independent executor, and that by reason of the transfer of the stock, the partnership of Green & Welhausen, Philip Welhausen and William Green, and Philip Welhausen as surviving member of the firm, and William D. Green as independent executor, were jointly and severally obligated and bound in the sum of $13,000, for which appellant prayed judgment.

The appellee executor filed a plea in abatement upon the ground that the petition alleged appellant had closed the bank in his official capacity as banking commissioner of Texas, but it did not show that he was appointed receiver by any court of competent jurisdiction as required by article 371 of the Revised Civil Statutes of Texas of 1925, and did not show that he pursued and observed the requirements of article 370 of the Revised Civil Statutes of 1925. A further plea in abatement was to the effect that the officials and directors of the bank did not place the bank or its assets in the hands of appellant, and that the corporation did not voluntarily come into the hands of appellant, refused to admit the bank was insolvent when closed, and the agents and employees took charge over the protest of the officers, and that by reason of these things it was the duty of appellant to report such facts to the Attorney General and the latter's duty to institute proceedings for receivership. These pleas were overruled.

The pleas in abatement were followed by general demurrer and several special exceptions, all of which were overruled. The special exceptions were followed by a special denial that there had been a valid assessment on the 130 shares of stock and a special denial under oath that there had ever been a partnership existing between Green and Welhausen; and then he specially pleaded that the Yoakum State Bank was incorporated on March 22, 1906, for a period of twenty years; that William Green and Philip Welhausen owned considerable stock therein, but that by contract, dated July 9, 1924, Green sold his interest therein to Driscoll, and, on August 23, 1924, executed a transfer thereof to him, and that title passed absolutely to him, notwithstanding it was pledged to secure a firm obligation, as Driscoll had the right and it was his duty to withdraw the certificate from the creditor, E. B. Chandler & Co., holding it as collateral, and have it transferred on the books of the bank in his name, and either place a new certificate with such creditor or to deliver it to the First National Bank of Shiner, Tex., C. B. Welhausen, and Peck Welhausen, trustees named in the contract.

That the life of the corporation ceased on March 22, 1926; that the stock ceased to exist by virtue of the expiration of the charter; that the bank was, on that date, solvent; that notwithstanding the expiration of said charter, the said Philip Welhausen and M. C. Driscoll, together with B. H. Treybig as cashier and director, continued to operate the Yoakum State Bank as before; that on July 20, 1927, Welhausen, Driscoll, and others, purporting to subscribe for stock in a new bank to take over the assets of the old, made application on August 9, 1927, to the department of banking, for a new charter, which was granted, a certified copy being recorded in DeWitt county, Tex., and that the then banking commissioner of Texas, in his official capacity, required the new bank to take over the assets of the old and assume its liabilities; that he adjudged that the amount of the assets were equal to the liabilities and, by such action, determined that the old bank was solvent on July 20, 1927, and on August 9, 1927, and that this official determination became res adjudicata and conclusive upon him and his successors, and hence appellant

was estopped from contending otherwise. The court sustained a special exception to this plea of res adjudicata.

He further pleaded that under the supervision and jurisdiction of the banking commissioner, state bank examiners officially and regularly examined the bank in 1926 and 1927; that regular statutory calls for reports under oath as to its condition were made, and the commissioner, in pursuance of his official duty, regularly considered such reports and statements, and, as a result, permitted the Yoakum State Bank to continue to operate, and that such action on the commissioner's part was an official determination that the bank was solvent, and that such acts and judgments of the commissioner became res adjudicata of the question of solvency and are conclusive on appellant and estop him from now (after the bank is closed) determining that the bank was, on July 20, 1927, or any time prior thereto, insolvent. The court sustained a special exception to this plea of res adjudicata and estoppel.

He then averred that on October 1, 1927, appellant, in his official capacity as banking commissioner, determined that the capital stock in the purported new bank had never been paid in, and further determined that the capital account had been impaired, and required Welhausen, Driscoll, and the other stockholders in the new bank to pay into the new bank $100,000 capital and $100,000 surplus; that Welhausen and Driscoll sought the aid of appellee in raising this money and appellee loaned Welhausen and Driscoll a large sum of money upon collateral he then knew to be doubtful and which did prove to be worthless, for the purpose of paying it into the bank as required, and the sum of $200,000 was paid in on January 23, 1928; that in April, 1928, appellant, Welhausen, and Driscoll, appellee, and a large number of other interested parties met and contributed the further sum of $200,000 upon the determination and assurance that these sums so paid in would restore the bank to solvency and that appellant was estopped to deny it was insolvent in April, 1928. A special exception to this plea of estoppel was sustained.

He next pleaded that it was the duty of the board of directors, when the bank's charter expired on March 22, 1926, to liquidate and settle the affairs of the bank; that with the consent of the banking commissioner, Welhausen and Driscoll continued to operate the bank, receiving deposits, collecting notes, and making new loans, and thereafter continued such operations under the purported new charter, and that it was utterly impossible to segregate the affairs and condition of the banks as of March 22, 1926, or to determine any time after September 5, 1928, whether the bank was insolvent on March 22, 1926, or on July 9, 1927, or on October 3, 1927. That the commissioner, at all times after August 9, 1927, treated the new charter as valid, and if it were not a corporation, then the shareholders thereof were partners, and, in either event, the right existed to purchase the assets of the old bank, and that the transaction resulted in a complete liquidation of the old bank, rendering the present assessment void.

The trial by the court without a jury resulted in a judgment in favor of appellant against the appellee independent executor of the estate of William Green, deceased, for the sum of $6,500, with interest from date of the judgment. The court further adjudged and decreed as follows:

"It appearing to the court that the partnership firm of Green and Welhausen was dissolved at a time long prior to the insolvency of said Yoakum State Bank and that the debts of said bank, in virtue of which plaintiff levied the assessment on the shares alleged in the petition, did not exist while said partnership existed or when it was terminated, the plaintiff is not entitled to judgment herein against the said former firm of Green and Welhausen, nor the defendant Executor of said William Green, deceased, nor said Philip Welhausen, as surviving member of said firm, by virtue of such former partnership; and the said Philip Welhausen having been discharged in bankruptcy since the institution of this suit and the plaintiff waiving any judgment against him personally by reason of his ownership of any of the shares of stock in said bank at the time it became insolvent;

"It is ordered, adjudged and decreed that plaintiff, James Shaw, Banking Commissioner of Texas, take nothing as against said former firm of Green and Welhausen, nor as against the said defendant William D. Green as Independent Executor of the estate of William Green, deceased, other than as hereinbefore decreed, nor as against the defendant Philip Welhausen, in his alleged capacity as surviving member of the firm of Green and Welhausen."

Both appellant and appellee executor excepted to this judgment and in due time perfected their appeals to this court.

In addition to the fact recitals in the judgment, the trial court, at the request of the parties, filed conclusions of fact. These fact conclusions, which are pertinent to the questions presented by these appeals, are as follows:

"1. I find that Yoakum State Bank, of Yoakum, Texas, was a state banking corporation organized under the banking laws of Texas on March 22, 1906, for a term of twenty years.

"2. I find that upon the incorporation of said bank it began a general banking business in the town of Yoakum in DeWitt County, Texas, and continuously pursued that business until it was closed and taken in charge by James Shaw as Banking Commissioner of Texas on September 5, 1928, for liquidation.

"3. I find that at the time of taking charge of said bank on September 5, 1928, the said Banking Commissioner, after a thorough examination and investigation into the financial condition of said bank, found that the same was insolvent on said date and also found that said bank had been insolvent for a period of more than twelve months immediately prior to the 5th day of September, 1928, and the court now finds that said bank was insolvent in accordance with the findings of the plaintiff acting in his official capacity.

"4. I find that the said Commissioner, acting in his official capacity, in accordance with the law, levied an assessment against the stockholders of said bank, who owned stock therein, as shown from the stock books and records of said bank at the time it closed against those stockholders who had transferred stock therein within twelve months' period prior to said closing date in amount equal to one hundred per cent of the par value of the stock so owned or transferred.

"5. I find that Green and Welhausen was a partnership composed of William Green and Philip Welhausen.

"6. I find that William Green died on May 10, 1927, leaving a will, by the terms of which William D. Green, the defendant herein, was designated and appointed executor thereof without bond, and that thereafter the said William D. Green duly qualified as such independent executor and has continued to act as such independent executor and representative of the estate.

"7. I find that the 130 shares of stock (of the par value of $13,000.00) involved in this suit was owned of record by Green and Welhausen for many years prior to the closing of the bank, and such apparent and record ownership continued until said 130 shares were transferred on the books of the bank on October 3, 1927.

"8. I find that at some date prior to July 9, 1924, said 130 shares of stock, then being owned by the partnership firm of Green and Welhausen, were pledged with E. B. Chandler as collateral security to a loan of the said partnership firm to said Chandler & Company and that said shares so continued to be held by Chandler & Company until they were sent to the Yoakum State Bank for transfer as hereinafter detailed.

"9. I find that on September 5, 1927, William D. Green, as independent executor of the estate of William Green, deceased, wrote to M. C. Driscoll, at Yoakum, Texas, as follows:

"'William D. Green, Shiner, Texas.
"'Mr. M. C. Driscoll, Yoakum, Texas.
"'Dear Mr. Driscoll: Enclosed find letter addressed to E. B. Chandler & Co. If you and Mr. Welhausen will sign this letter and return to me, or mail to E. B. Chandler & Co., I will see that the stock is sent us immediately for the purpose of reissuance in the name of Welhausen & Driscoll.
"'Would appreciate it if you will give this prompt attention.
"'With kindest regards, I am
"'Very truly yours,
"'[Signed]  Wm. D. Green.'

"10. Pursuant to the above request, E. B. Chandler & Company, through the Lockwood National Bank of San Antonio, Texas, on September 20, 1927, mailed said 130 shares of stock to said Yoakum State Bank with request that the same be transferred on the books of the bank to Welhausen & Driscoll, a partnership composed of Philip Welhausen and M. C. Driscoll; and I also find that said transfer of said 130 shares of stock took place on the books of said bank on October 3, 1927.

"11. I find that at no time prior to the transfer, on October 3, 1927, as hereinbefore found, were the said 130 shares of

stock ever presented to said Yoakum State Bank for transfer.

"12. That the by-laws of said Yoakum State Bank provided the only method of transferring stock of said bank on the books thereof; that is, by surrender of existing certificates and cancellation thereof, and issuance of a new certificate in favor of the party entitled thereto; and the certificates themselves likewise provided that they were transferable only on the books of the bank in person or by attorney on the surrender of the certificates properly endorsed.

"13. That although the charter of said Yoakum State Bank, by reason of the twenty-year provisions therein, expired on March 22, 1926, such fact was not actually discovered by the state authorities of the bank officials until July or August of 1927, and the bank continued to transact business the same as though its charter had not expired, with the same officers and directors, the latter, as well as the stockholders, all the while holding meetings as they had always done; submitting to and recognizing the jurisdiction of the Banking Commissioner and his examiners who examined the institution as before, answering the periodical calls of the Commissioner for statements of their financial condition by furnishing him with such statements and also publishing the same in the local newspaper as required by the banking laws of this state.

"14. I find that when it was discovered, in July or August of 1927, that the charter had expired on March 22, 1926, that the officers and directors and others, as proposed incorporators, made application to the State Banking Board for a charter for a new bank with the same name of the old bank, and in so doing an officer of the bank certified to the Banking Commissioner that there was on hand in the bank, subject to check by the proposed new corporation or its directors, the sum of $100,000.00 which ostensibly represented the capital stock of the proposed bank which was to take over the assets and assume the liabilities of the old bank, and that the Banking Commissioner and the Banking Board, relying upon the certificate that the capital stock had been paid in in cash or caused to be issued a charter for the new bank."

Findings Nos. 15 and 16 need not be set out in full. The substance of the fifteenth finding is that when the application for a charter for a new Yoakum State Bank was presented to the state banking board, the then banking commissioner explained to the board "that there has been a bank operating at Yoakum under the name of 'Yoakum State Bank' for a great many years, but that it was recently discovered the charter of such institution had expired by limitation a number of months ago, and the purpose of the proposed new organization is to purchase the private banking business now being conducted at Yoakum by the stockholders of the old bank in violation of law, and that the practical effect will be the same as if an extension of the charter of the old bank could have been effected, but the charter having expired, the law makes no provision for an extension in such instances." All members of the board being present, the application was approved, the charter granted, and the banking commissioner instructed to permit the bank to open for business. This charter was filed in the department of banking on August 9, 1927, and certified copy was, on or about August 10, 1927, delivered to applicants, on which date it was filed and recorded in the Deed Records of DeWitt county.

"17. I find, however, that the Commissioner of Banking subsequently discovered that no part of the capital stock had been paid in in cash, as required by law, but that said transaction was, in fact, handled in the following manner: That in order to raise or create an account of $100,000.00, being the amount of the proposed capital of the new bank, Philip Welhausen and M. C. Driscoll each executed a note for $50,000.00 in favor of the old bank and such notes were placed in the old bank and the proceeds thereof, or rather the credit of $100,000.00 was placed to the credit of an account on the depositors' ledger of the old bank under the style 'Stockholders Yoakum State Bank', and as soon as the charter was obtained, the above mentioned credit of $100,000.00 was reversed and the two notes cancelled and all entries reversed, and no money or anything of value whatsoever paid in or used as the new capital.

"18. I further find that after the attempted transfer of the affairs of the old bank to the new bank, as above detailed, all of the same books and records of the former bank were carried right along as though nothing had ever happened and that no new stock was ever issued to those who signed the new charter papers, and that the bank continued to use the same stock cer-

tificate book and the same stock ledger that it had always used.

"19. I also find that the stock certificates of the old stockholders, when the above transaction took place, were never called in and never cancelled, but that all subsequent stock sales and transfers of stock, including the 130 shares involved in this suit, were entered on the same stock books and records as had been used by the bank prior to the expiration of its charter and prior to the attempted incorporation of the new bank.

"20. On July 9, 1924, William Green, deceased, entered into a contract in writing with M. C. Driscoll by the terms of which Green agreed to sell his interest in a large amount of real and personal property then owned by the partnership firm of Green and Welhausen, and the 130 shares of stock, the subject matter of this suit, were included in said sales contract. In this connection, I find that on or about the date of this contract William Green gave written notice of the dissolution of the partnership of Green & Welhausen to many of the creditors of Green & Welhausen, and by publishing in the Shiner paper notice of such dissolution.

"21. I find that William Green, deceased, thereafter on August 23, 1924, executed and delivered to M. C. Driscoll, in compliance with the terms of the contract of July 9, 1924, the following instrument, and that the 130 shares of stock involved in this suit were incorporated in this instrument:

" 'For Value Received, I hereby transfer unto M. C. Driscoll all my right, title and interest in and to Four Hundred and Sixty (460) shares of the Capital Stock of the Yoakum State Bank of Yoakum, Texas, represented by certificates Nos. 5, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 103, 104, 106, 107, 108, 105, 109, 110, 111, 112, and 113.

" 'Witness my hand at Shiner, Texas, this 23rd day of August, A. D. 1924.

" '[Signed]   Wm. Green.

" 'Witness—C. B. Stratman.

" 'The above stock is hypothecated for the security of loans, as follows:

With Union National Bank,
   Houston, Texas.

Certificates Nos. 5, 6, 7, 9,
  10, 11, 12, 13, 14, 15, 16,
  17, 18, 19, 20, 21, 22, 23,
  24, 25, 26, 27, and 28 for
  10 shares each         230.00

With E. B. Chandler & Co.,
   San Antonio, Texas.

Certificates Nos. 103 and 104
  for 50 shares each,      100
  Nos. 106, 107 and 108
  for 10 shares each,       30
  No. 105 for              50
  Nos. 109, 110, 111, 112,
  and 113 for 10 shs      50
                               230.00

                               460.00'

"22. I find that long prior to July 9, 1924, and down to April 24, 1927, William Green was president of Yoakum State Bank and was likewise, during said period of time duly qualified member of the board of directors thereof.

"23. That the charter of the bank was amended on May 16, 1926, so as to permit the bank to change from Guaranty Fund System to the Bond Security Plan of securing its depositors; and that said amendment papers were signed by William Green as president of the bank; that the stockholders of said bank signed and executed a waiver of the required notice of meeting of the stockholders to be called to consider that charter amendment; and that William Green signed and executed the waiver on behalf of himself as owner of ten shares and on behalf of Green & Welhausen as owner of 720 shares of stock in said bank of which 130 shares involved in this suit is a part.

"I further find that William Green presided at a meeting of the directors of the bank on the 27th day of February, 1926, at which meeting authority was given to the officers of the bank (and William Green was then President of the Bank) to make the firm of Green and Welhausen a loan of $5,000.00. I also find that William Green attested the statement of the financial condition of the bank as submitted to the Banking Commissioner and as published in the newspaper on June 30, 1926."

The counter-propositions presented by appellee executor in answer to appellant's contentions in this case are in substance the same as those presented in (Tex.Civ. App.) 105 S.W.(2d) 767 between the same parties involving an assessment of stock which appeared on the books of the State Bank of Westhoff in the name of Green & Welhausen. This stock had been issued to and received by Green & Welhausen, and was transferred by them on the books

of the bank in less than twelve months before the insolvency of the bank. The controlling questions in that case were certified by us to the Supreme Court for its decision. The opinion of the Supreme Court in answer to the certified question is reported in 99 S.W.(2d) 889. In compliance with that opinion, we reversed the judgment of the trial court holding the Green executor liable for the assessment on only one-half of the shares of stock, and rendered judgment in favor of the appellant banking commissioner for recovery against the executor of the assessment upon all of the stock appearing on the books of the bank in the name of Green & Welhausen. 105 S.W.(2d) 767.

It seems clear to us that the conclusions reached by the Supreme Court in the case of Shaw, Banking Commissioner v. Green, supra, and the rule there announced, cannot be applied to the facts of the instant case.

The findings of the trial court before set out, which were not excepted to, conclusively establish these facts: The charter of the Yoakum State Bank expired on March 21, 1926; this fact did not come to the knowledge of the officers of the bank nor to the state banking authorities until July or August, 1927. When the state banking authorities and the officers of the bank awoke to a consciousness of the fact that the bank had been operating as a state bank for more than two years after the expiration of its charter, they all found themselves in the "middle of a bad fix." In this situation, a number of the stockholders of the bank decided to organize a new state bank of the same name as the old bank. As we have before set out, this plan was carried out by the issuance of a charter for the new bank and its record in DeWitt county. This was all that was done in the organization of the new bank. It never put up any money for its capital stock, kept any stock book nor issued any stock to any of the incorporators of the new bank.

William Green was not one of the incorporators of the new bank. The partnership firm of Green & Welhausen was (as recited in the judgment of the trial court) dissolved at a time long prior to the insolvency of the old bank, and the debts of the old bank, for which the appellant levied the assessment on its shares of stock, as alleged in his petition, did not exist during the existence of this partnership. At the time of the sale by the firm of Green &

Welhausen to M. C. Driscoll of the stock held by the firm in the old bank, there is no finding that the old bank was then insolvent. These shares of stock were all, as shown by the trial court's findings, then held by creditors of Driscoll. As shown by the court's fact findings, appellee executor's connection with the transfer of this stock on the books of the old bank on October 3, 1927, was to suggest to Driscoll and the creditors who held the stock as security for a loan that such transfer be made to Driscoll, and to assist them in procuring such transfer to be made on the books of the bank.

We know of no law which authorizes the state banking commissioner to take possession of the property of a bank, the charter of which had expired more than two years prior to the taking possession of the bank by the commissioner. We cannot believe that the fact that the bank had been so illegally operated by its officers and stockholders would authorize the banking commissioner, when he learned it was insolvent, to take possession of the bank and levy upon all of its stockholders an assessment of 100 per cent. of the par value of the stock appearing on the books of the bank in the name of such stockholders. Appellant has cited no case which so holds, and we cannot think any opinion of our Supreme Court or Courts of Civil Appeals has so held.

The contention of appellant that under the facts found by the trial court he was authorized to close the old Yoakum State Bank, take possession of its property, and levy the assessment sought to be collected in this suit from the defendant executor, certainly finds no support in the opinion of the Supreme Court in the case of Shaw v. Green, before cited. In that case, as before indicated, there was no expiration of the charter of the Westhoff Bank that issued the stock upon which the assessment was made, nor a dissolution of the partnership to whom the stock was issued, as the court's judgment recites, "a long time prior to the insolvency of the Bank."

We think the learned trial judge correctly held, upon the facts found by him, that judgment could not be properly rendered against the appellee executor for the assessment upon the stock in the old defunct bank appearing on the books of that bank in the name of Green & Welhausen for the full amount of such assessment.

It seems clear to us that the same rule of law and reason which relieved the executor, and the estate of William Green, deceased, from liability for one-half of the stock appearing on the books of the bank in the name of Green & Welhausen, relieves the executor from all liability on that assessment.

It is unnecessary for us to set out the counter-propositions and cross-assignments presented in the brief of appellee executor. It is sufficient to say that these propositions and cross-assignments fully present the questions on which our conclusions above stated are based.

It follows from these conclusions that the judgment of the trial court that appellant take nothing against appellee executor for one-half of the assessment upon the par value of the stock involved in the suit will be affirmed, and the judgment against the executor for one-half of such assessment will be reversed and judgment here rendered that appellant take nothing by his suit, and it is so ordered.

Reversed and rendered.