The BANK OF EL PASO, Appellant,

v.

Ralph POWELL and Phil Statler, Appellees.

No. 6570.

Court of Civil Appeals of Texas, El Paso.

April 13, 1977.

Edwards, Belk, Hunter & Kerr, John W. Welsh, Jr., El Paso, for appellant.

Bruce J. Ponder, Charles E. Vinson, El Paso, for appellees.

## OPINION

OSBORN, Justice.

This appeal involves a hold harmless agreement signed by a Bank customer in an effort to stop payment on a Bank money order, and a setoff of income earned by the Bank while holding the funds used to purchase the Bank money order. We affirm the trial Court's judgment allowing such setoff.

On December 15, 1970, Ralph Powell purchased a Bank money order from The Bank of El Paso, which was payable to the order of Eduardo R. Castro in the sum of $20,-820.04. On December 22, 1970, and prior to any payment, Powell signed a stop payment order which included an agreement to hold the Bank harmless for said amount, as well as all costs and expenses incurred by the Bank through refusing payment of its money order. After payment was refused, Castro sued the Bank. Ralph Powell and Phil Statler each filed petitions in intervention, claiming all or part of the sum involved. The Bank did not deposit the $20,820.04 into the registry of the Court until after September 30, 1974, and, shortly thereafter, it filed a cross-claim under its hold harmless agreement.

In August, 1974, Castro, Statler, and Powell entered into a release and compromise settlement agreement under which Castro was to receive the full amount of the money order, and he was to pay to Statler and Powell $9,700.00. On September 27, 1974, the Court entered an order of dismissal with prejudice as to the petitions in intervention, and it provided that Powell and Statler take nothing against the Plaintiff, Castro, and the Defendant, The Bank of El Paso.

Based upon the settlement agreement, on January 9, 1975, the trial Court entered a final judgment ordering the District Clerk to pay to Castro $11,120.04, and awarded him $4,722.67 from the Bank for interest on the sum held by the Bank from December, 1970, until the end of September, 1974. The Court ordered the Clerk to hold $9,700.00 until disposition of the Bank's cross-claim, which was severed. Upon trial of the severed issue, which results in this appeal, the Court awarded The Bank of El Paso $4,722.67 for the interest it was required to pay to Castro, plus $2,500.00 as its reasonable attorney's fees, but allowed the Defendants, Powell and Statler, an offset of $5,317.03 as the amount the Bank earned on the $20,820.04 during the period the Bank held those funds. Thus, the Bank actually recovered $1,905.64 on its cross-claim, and Powell and Statler were awarded the balance of the $9,700.00 held by the Clerk.

The Bank presents five points of error contending that the trial Court erred in allowing any offset against the sums the

Bank was permitted to recover under the hold harmless agreement. First, we should note that a bank money order, or a cashier's check, is accepted for payment when issued and it is not subject to countermand by either the purchaser or the issuing bank. *Wertz v. Richardson Heights Bank and Trust,* 495 S.W.2d 572 (Tex.1973). We also note that at the time of the entry of the order of dismissal of the petitions in intervention, the claims subsequently made for the offset were not before the Court, and the dismissal was only as to the claims for a part of the $20,820.04. That order, therefore, could not be res judicata of a claim which had not yet been made, and which was later presented by way of a setoff to the Bank's cross-claim. *Bernard v. Gulf Insurance Company,* 542 S.W.2d 429 (Tex. Civ.App.—El Paso 1976, writ ref'd n. r. e.). Although the issue of res judicata was urged in oral argument, no point of error presents such issue for review.

■ In this case, the Bank did accept a stop payment order as a courtesy to its customer, but required that it be held harmless for the amount of the money order as well as all costs and expense incurred by the Bank through refusing payment of its money order. As the Court said in *New York Central Railroad Company v. General Motors Corporation,* 182 F.Supp. 273 (U.S. D.C. Ohio 1960), " 'Hold harmless' means to assume all expenses incident to the defense of any claim and to fully compensate an indemnitee for all loss or expense * *." The net effect of the agreement was that the customer agreed to indemnify the Bank for any loss it incurred, but not to discharge the liability of the Bank. *Russell v. Lemons,* 205 S.W.2d 629 (Tex.Civ.App.—Amarillo 1947, writ ref'd n. r. e.). The distinction was discussed by Justice Reavley in *Hernandez v. Great American Insurance Company of New York,* 464 S.W.2d 91 (Tex. 1971), where he said:

"The traditional rule of strict indemnity requires the indemnitor to reimburse only actual loss and not to discharge the liability of the indemnitee. 41 Am.Jur.2d Indemnity Secs. 28 et seq. Chief Justice

Hemphill criticized this rule in 1857 in *Pope v. Hays,* 19 Tex. 375, but it is a firmly established part of the law of indemnity contracts. It is consistent with the favoritism of the law for guarantors and indemnitors. *McKnight v. Virginia Mirror Co.,* 463 S.W.2d 428 (Tex.1971). It has been said to follow the maxim: 'As a man binds himself, so shall he be bound;' and thus one who agrees to indemnify against loss should not be required to pay more than what is actually lost. *Russell v. Lemons,* 205 S.W.2d 629, 631 (Tex.Civ. App.1947, writ ref'd n. r. e.)."

In *Kramer v. Linz,* 73 S.W.2d 648 (Tex. Civ.App.—El Paso 1934, no writ), this Court considered the effect of an indemnity agreement given to an investor to secure him against loss on certain stock which he purchased. In a suit on the indemnity agreement after the stock became worthless, the Court held that dividends received by the stockholder should be considered in arriving at his loss, and said:

" 'As a general rule, in suits on ordinary contracts of indemnity, the measure of damages is the loss actually sustained or the amount actually paid. * * *' 31 C.J. Sec. 28, p. 434.

"This being true and the rule of construction of indemnity contracts being that they must be strictly construed in favor of the indemnitor, we are of the opinion that the amounts received by appellee as dividends should have been taken into consideration in determining whether or not he had sustained a loss and, if so, the amount thereof."

■ Thus, we conclude that the trial Court properly determined that the Bank is accountable for any benefits which accrued to it as a result of its holding in its demand deposits the sum of $20,820.04 (less the reserve for federal reserve requirements) for the period from December, 1970, to September, 1974. Otherwise, the Bank has not been reimbursed just for its loss, but it has in effect made a substantial profit on funds held by it for nearly four years.

■ We review the case with an agreed statement of facts, and while the evidence

may be meager, it is sufficient to support the trial Court's findings as to the amount earned by the Bank on the funds held for payment of its money order.

The Appellant's points of error are all overruled. The judgment of the trial Court is affirmed.