John D. HOLCOMB, Plaintiff-Appellant,

v.

PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant-Appellee.

No. 80–1497.

United States Court of Appeals,
Fifth Circuit.*
Unit A

April 14, 1982.

Brown & Brown, Inc., Homer A. Brown, Francis A. Harris, Fred R. Brown, Garland, Tex., for plaintiff-appellant.

Thompson, Knight, Simmons & Bullion, Luke Ashley, Timothy R. McCormick, Dallas, Tex., for defendant-appellee.

Before BROWN and TATE, Circuit Judges, and SMITH **, District Judge.

JOHN R. BROWN, Circuit Judge.

This diversity case, tried to the court largely on stipulated facts, raises the narrow issue of the correct interpretation of an income protection policy. The District Court entered judgment in favor of the insurer. Finding that the District Court erred as a matter of law in its interpretation of the insurance policy, we reverse.[1]

---

\* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

\*\* District Judge of the Northern District of Mississippi, sitting by designation.

1. In his brief on appeal, Holcomb reasserts his claim for a penalty of 12%, reasonable attor-

ney's fees, and interest and costs, pursuant to Article 3.62 of the Texas Insurance Code. Because of our disposition of this case, we remand for determination by the District Court of the limited issue of the penalty, fees, and costs, if any, under the Texas Insurance Code.

## I. *Facts*

Plaintiff John Holcomb sustained an accidental injury on September 17, 1971. As a result of this injury, Holcomb was totally disabled from that date until November 2, 1971. Holcomb again became disabled on January 1, 1971 and has been disabled continuously since that date.

In April 1957, Holcomb had purchased from Prudential Insurance Company of America (Prudential) an income protection policy covering disability due to sickness or accidental injury.[2] Basically, the policy provides for lifetime benefits when total disability results from accidental injury and this disability commences within 60 days after the date of the injury.[3] When a disability is due to sickness, the maximum duration of benefits is 24 months.[4] At the heart of this controversy is the policy "deeming" provision (note 3 *supra*) which states that a period of total disability commencing more than 60 days after an injury is sustained is "deemed" to be a disability due to sickness, and in that case, benefits are restricted to a maximum of 24 monthly payments.

After sustaining the injury on September 17, 1971, Holcomb applied for benefits which he received until November 1971. Between November 2, 1971 and January 1, 1972, Holcomb was not disabled. Holcomb subsequently filed a second application for total disability, this one for the period beginning as of January 1, 1972. Following this application Prudential paid total disability benefits to Holcomb from January 29, 1973 to January 29, 1975, a period of 24 months. At the end of these payments, Prudential informed Holcomb that he had

---

2. Wherever used in this Policy:

    "Sickness" means only sickness or disease of the Insured contracted and commencing 16 or more days after the Effective Date.

    "Injury" means only accidental bodily injury sustained by the Insured on or after the Effective Date.

    "Total disability" is defined as follows: (a) "total disability" means the complete inability of the Insured due to sickness or injury to perform any and every duty pertaining to his occupation until Monthly Income Benefits have been payable under the Policy during any period of disability for 24 months or for the period for which Monthly Income Benefits are payable, if less; and (b) after Monthly Income Benefits have been payable under the Policy during any period of disability due to sickness or injury for 24 months, then during the remainder, if any, of the period for which Monthly Income Benefits are payable, "total disability" means the complete inability of the Insured due to sickness or injury, as the case may be, to engage in any and every gainful occupation for which he is reasonably fitted by education, training or experience;

    provided that in no event shall "total disability" exist for any purpose of this Policy during any period in which the Insured is engaged in his or any other gainful occupation.

3. **Part 2. Benefit for Loss of Time During Total Disability due to Injury:** If total disability of the Insured due to injury commences while this Policy is in force and within 60 days after the date such injury is sustained, and requires the regular care of a licensed physician, the Company will periodically pay the Monthly Income Benefit for each month (one-thirtieth of the Monthly Income Benefit for each day of any period not constituting a full month) throughout which such total disability continues beyond the Elimination Period for total disability due to injury, but no longer than the Maximum Duration of Monthly Income Benefits for total disability due to injury, provided that in no event shall benefits be payable under this Part 2 for any period during which benefits are payable under Part 1 of this Policy. *If a period of total disability of the Insured due to injury commences while this Policy is in force but more than 60 days after such injury is sustained, such total disability shall, for the purposes of this Policy, be deemed to have been due to sickness.* (emphasis added)

4. **Part 1. Benefit for Loss of Time During Total Disability due to Sickness:** If total disability of the Insured due to sickness commences while this Policy is in force and requires the regular care of a licensed physician, the Company will periodically pay the Monthly Income Benefit for each month (one-thirtieth of the Monthly Income Benefit for each day of any period not constituting a full month) throughout which such total disability continues beyond the Elimination Period for total disability due to sickness, but no longer than the Maximum Duration of Monthly Income Benefits for total disability due to sickness, provided that in no event shall more than 12 months' benefits be payable after the Insured's 64th birthday for all such total disability whether commencing before, on, or after such birthday.

received the maximum benefits under the sickness provisions of the policy. Prudential contended that this period of disability, which it determined had begun on January 1, 1972, commenced more than 60 days after the September 17, 1971 injury, and thus under the deeming provision of the policy (note 3 *supra*) was treated as a disability due to sickness with the maximum benefit being 24 months.

In effect, the insurer considered Holcomb to have sustained two separate disabilities, one commencing September 17, 1971 and one commencing January 1, 1972. Holcomb disputed this interpretation of the policy, asserting that the disability caused by the injury of September 17, 1971 began on the date of the injury, caused total disability until November 2, 1971, and then recurred on January 1, 1972. Since the total disability *initially* commenced within 60 days of the injury (note 3 *supra*), in this case the date of injury and commencement of disability being the same, Holcomb argued that he was entitled to lifetime benefits rather than the limited period of benefits under the deeming provision.

## II. The Rocky Road in the District Court

Holcomb brought suit against Prudential, seeking to recover the disability payments for the period after 24 months and asserting a violation of the Texas Deceptive Trade Practices—Consumer Protection Act and the Texas Insurance Code.[5] The parties waived a jury trial and stipulated to the material facts.[6] The stipulations of significance here are: (i) Holcomb sustained an accidental injury on September 17, 1971, entitling him to total disability payment through November 2, 1971; and (ii) Holcomb was totally disabled from January 1, 1972. It was also uncontradicted that the second period of disability related to the accidental injury of September 17, 1971 and that Holcomb is presently disabled within the meaning of the policy. The District

Court agreed with the insurer that there were two separate and distinct periods of disability, one from September 17 through November 2, 1971 and one commencing on January 1, 1972. From this determination, the District Court determined that the second disability—that commencing on January 1, 1972—began more than 60 days after the accidental injury in September 1971 and thus the deeming provision, treating such a disability as due to sickness and restricting benefits to 24 months, was applicable. From the judgment for the insurer, Holcomb appeals.

## III. Plaintiff's Piece of the Rock

Holcomb's primary contention is that the total disability commenced on the date of his injury, September 17, 1971, abated on November 2, 1971, and reoccurred on January 1, 1972. Since the initial onset of total disability occurred within 60 days of injury, Holcomb claims he is entitled to lifetime benefits under the policy. He points out that the policy has no specific requirement that the disability be continuous. As to the deeming provision, Holcomb asserts that it is irrelevant to his situation. Prudential's position, accepted by the District Court, is that the present period of disability began on January 1, 1972, more than 60 days after the injury in September, and therefore under the policy must be deemed to be due to sickness. Prudential focuses on the language of the deeming provision which refers to "*a period of* total disability". From this wording, Prudential argues that Holcomb here had two periods of disability, the second one commencing on January 1, 1972, more than 60 days from the date of injury. Under Prudential's position, we look to the most recent period of disability, not to the initial date of injury. The use of the phrase "a period" is the essential element of Prudential's argument that the deeming provision is applicable. Under this language,

---

5. The District Court granted Prudential's motion for summary judgment as to Holcomb's claim under the Texas Deceptive Trade Practices—Consumer Protection Act and the Texas Insurance Code.

6. The trial before the District Court consisted of stipulations, introduction of exhibits, and the testimony of Holcomb and an attorney employed by Prudential. The testimony focused on the issues of unconscionability, repudiation, and life expectancy.

Prudential would find that the policy contemplates that a disability may come and go and that the determinative factor is the latest "period of disability."

In its findings, the District Court specifically stated that Holcomb sustained an accidental injury on September 17, 1971; was totally disabled until November 2, 1971; and became totally disabled on January 1, 1972. Further, the District Court declared that "[t]he producing cause of this disability was the accidental injury Plaintiff sustained on September 17, 1971.... This disability is separate and distinct from the September 17-November 2, 1971 period of disability; and, the disability commencing on January 1, 1972, commenced more than 60 days after the injury Plaintiff sustained on September 17, 1971." Logically, there is much difficulty in seeing how the District Court could find two disabilities since the parties stipulated and the District Court determined that the producing cause of the second one was the same as that of the first. Considering that the critical facts were both stipulated and uncontradicted, the determination by the District Court that there were two disabilities was, in effect a conclusion of law, not a finding of fact as formally characterized, constituting a legal interpretation of the policy terms.

▆ From the language of the policy, under the stipulated facts, we think it is clear that Holcomb's total disability "commenced" within 60 days after the date of injury and thus falls within the disability due to injury provision (note 3 *supra*). The deeming provision does not come into play unless the disability *commences* more than 60 days after injury.

▆ In an attempt to find the deeming provision applicable to this situation of a reoccuring disability, Prudential argues that the time of disability beginning January 1 was "a period of total disability" which period commenced more than 60 days from the date of injury. This interpretation distorts the context in which the deeming provision is included. From a reading of the entire paragraph on benefits for total disability due to injury (note 3 *supra*), this

deeming provision must be seen as a restriction of those benefits when the total disability first manifests itself more than 60 days after injury. The phrase "a period of total disability" can also be read as "any period of total disability" and thus together with the first sentence in Part 2, clarifies what is not treated as disability due to injury. That the deeming provision is merely a further clarification rather than an attempt to create "periods" of total disability, can be seen from the fact that the beginning of the sentence uses the phrase "a period of total disability" while the end of the sentence says "such total disability", a phrase which would negate Prudential's argument that the deeming provision contemplates separate periods of disability. Also, the use of the word "commences" in the deeming provision does not create the inference of intermittent disabilities or support the interpretation that this provision is designed to apply to the situation of a disability which recurs.

While we have no difficulty in finding that the District Court misconstrued the deeming provision language in the policy, we could also reach the same result if we were to find that the insurance policy provisions were ambiguous under the facts of a recurring disability.

Texas follows the well-settled rule that insurance policies will be interpreted liberally in favor of the insured and ambiguities strictly against the insurer, especially when dealing with exceptions and words of limitation.... Furthermore, when the language of the insurance policy is susceptible of more than one reasonable construction, courts should apply that construction which favors the insured and permit recovery.

*Dow Chemical Co. v. Royal Indemnity Co.,* 635 F.2d 379, 386 (5th Cir. 1981) (citations omitted). *See Snyder National Bank v. Westchester Fire Insurance Co.,* 425 F.2d 849 (5th Cir. 1970); *Ranger Insurance Co. v. Bowie,* 574 S.W.2d 540 (Tex.1978); *Glover v. National Insurance Underwriters,* 545 S.W.2d 755 (Tex.1977); *Ramsay v. Maryland American General Insurance Co.,* 533

S.W.2d 344 (Tex.1976). Assuming ambiguity, we would hold that the deeming provision applies only when initial total disability *commences* more than 60 days from the date of the injury and that the determination of the date of commencement looks to the original manifestation of the total disability, not to any recurrences.

This interpretation also accords with the general purpose of the policy, that is, to provide greater benefits when the loss results from total disability due to injury and yet protect the insurer from harassing litigation where causal connection of disability to injury is weak. Certainly, an insured would not ordinarily anticipate that a policy providing lifetime benefits for disability due to injury will not include full coverage if the nature of the disability is such that there may be a remission for a period of time. Nor would he ordinarily realize that he is better advised to stay in bed for the first 60 days following injury rather than to attempt to overcome the disability. Under Prudential's interpretation, if the insured tries to work for even one day, so that he is not "totally disabled", he runs the risk of losing his lifetime benefits if that one day occurs more than 60 days after the original date of injury. If Prudential's interpretation were correct, some might suggest that the policy should come with a warning: "Caution: work may be hazardous to your benefits". While it is true that Holcomb could have selected a policy providing more than 24 months of coverage for total disability due to sickness,[7] we find the existence of this option irrelevant when the initial total disability occurs within 60 days of the date of injury.

REVERSED AND REMANDED.

---

**7.** In applying for the policy, Holcomb was given the option to select the amount of monthly benefits and the maximum duration period for disability due to sickness and due to injury. While Holcomb elected lifetime benefits for those disabilities resulting from injury, he consciously chose to limit to 24 months the duration of benefits for disability due to sickness. As Prudential points out, the selection of duration of benefits affects the premium calculation.