AMOCO CANADA PETROLEUM COMPANY, LTD., Plaintiff–Appellant,

v.

WILD WELL CONTROL, INC., Defendant–Appellant,

v.

ILLINOIS UNION INSURANCE COMPANY, Intervenor–Appellee.

No. 89–2014.

United States Court of Appeals, Fifth Circuit.

Dec. 5, 1989.

John P. Forney, Jr., Eastham, Watson, Dale & Foenry, Houston, Tex., for Amoco Canada Petroleum Co., Ltd.

William L. Maynard, Susan K. Pavlica, Beirne, Maynard & Parsons, Houston, Tex., for Wild Well Control, Inc.

Joseph Cohen, Preston Towber, Hirsch & Westheimer, Houston, Tex., for intervenor-appellee.

Before JOHNSON, WILLIAMS, and GARWOOD, Circuit Judges.

JOHNSON, Circuit Judge:

Appellants, Amoco Canada Petroleum Company, Ltd. ("Amoco") and Wild Well Control, Inc. ("Wild Well"), appeal from the district court's grant of summary judgment in favor of appellee, Illinois Union Insurance Company ("Illinois Union"). The district court determined that the umbrella policy issued by Illinois Union to Wild Well did not provide coverage under the facts of this case. This Court affirms.

## I. FACTS AND PROCEDURAL HISTORY

Appellant Wild Well is in the business of controlling well fires and escaping oil, gas, and condensate. Illinois Union issued a $5,000,000.00 umbrella liability insurance policy to Wild Well, in excess of Wild Well's $500,000.00 primary liability insur-ance policy. The primary policy specifically afforded contractual liability coverage for personal injuries. If this primary policy were exhausted, the umbrella policy "would continue in force as underlying [primary] insurance" and would be "subject to the terms and conditions of the underlying insurance." Record Excerpts at 17. The umbrella policy included an Endorsement No. 2, which stated that "[i]t is agreed as a condition prior to coverage that [Wild Well] with take a 'Hold Harmless Agreement' with their customer prior to attempting to bring the customer's well under control." *Id.* at 24.

When Amoco hired Wild Well, the two entered into a work order agreement which provided that Amoco would indemnify Wild Well from "any and all claims ... of every kind and character ... which may be as-serted against [Wild Well], its agents or employees, by reason of or in anywise con-nected with the performance ... of the above described ... services." *Id.* at 40. After Wild Well began work on Amoco's well, the two entered into an amendment to their original work order, whereby Wild Well would indemnify and "hold harmless" Amoco for all claims with respect to Wild Well's agents or employees.

Subsequently, while trying to control Amoco's well, two Wild Well employees were killed. Amoco settled with the sur-vivors of the two employees and brought a diversity action for indemnification against Wild Well. Illinois Union was allowed to intervene in the action and moved for sum-mary judgment. Illinois Union maintained that the umbrella policy did not cover any contractual liability of Wild Well to Amoco. Amoco and Wild Well entered into an agreed judgment of $2,000,000.00 against Wild Well. The district court then granted Illinois Union's summary judgment motion, denied Amoco's counterclaim against Illi-nois Union, and held that the umbrella poli-cy would not provide coverage in this case. We affirm.

## II. CONDITION PRECEDENT FOR COVERAGE

As discussed above, Endorsement No. 2 of Illinois Union's umbrella policy requires

Wild Well to obtain a "Hold Harmless Agreement" from Amoco as a condition precedent for coverage. Both Amoco and Wild Well argue that this provision is ambiguous, and that the district court was required to accept their not unreasonable interpretation. *See Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 665–66 (Tex.1987). Their (Amoco's and Wild Well's) interpretation is that Illinois Union's policy Endorsement No. 2 allowed for coverage of Wild Well's agreement to indemnify Amoco for claims with respect to Wild Well's employees. Specifically, Amoco and Wild Well argue that Endorsement No. 2 is ambiguous for the following reasons: 1) that the umbrella policy's coverage is meant to follow that of the primary policy, which includes Wild Well's contractual liability, and furthermore that the exception to the exclusion of worker's compensation claims expressly affords coverage for Wild Well's contractual assumption of Amoco's liability; 2) that Endorsement No. 2 neither defines "Hold Harmless Agreements" nor specifies the type of perils for which such agreements are required; 3) that Endorsement No. 2 does not expressly alter the umbrella policy's coverage for Wild Well's contractual liability; and 4) that if "Hold Harmless Agreements" were required for all types of claims, there would have been no reason for Wild Well to obtain this umbrella policy.

■ Amoco and Wild Well rely to a great degree on the special state laws of construction of insurance coverage. Specifically, that courts should construe such contracts in favor of coverage. Furthermore, that courts should adopt the interpretation of the insured unless the insurer demonstrates that the insured's interpretation is unreasonable. However, these special rules of construction only apply if the terms of the agreement are ambiguous, that is, if the terms are susceptible to more than one reasonable interpretation. *Barnett*, 723 S.W.2d at 665–66; *Harbor Ins. Co. v. Trammell Crow Co., Inc.*, 854 F.2d 94, 99 (5th Cir.1988); *Holcomb v. Prudential Ins. Co. of America*, 673 F.2d 102, 105–06 (5th Cir.1982) (citing Texas law with approval). Therefore, in the present case,

the special rules would apply if the term "Hold Harmless Agreement" is ambiguous. For the following reasons, Amoco and Wild Well have failed to persuade this Court that the term "Hold Harmless" is ambiguous.

■ First, while it is true that most umbrella policies generally follow the coverage provided for under the primary policy, Illinois Union expressly limited its policy's coverage by including Endorsement No. 2. This Court determines that effect should be given to this limitation. Furthermore, this Court is not persuaded by the argument that coverage in this case is afforded under the following insurance policy proviso:

> This policy shall not apply:
>
> \*      \*      \*      \*      \*      \*
>
> (b) to any obligation for which the Insured or any company as its insured may be held liable under any workman's compensation, unemployment compensation or disability benefits law, or under any similar law *provided, however, that this exclusion does not apply to liability of others assumed by the Named Insured under contract or agreement.*

Record Excerpts at 34 (emphasis added). Wild Well and Amoco contend that the facts of this case fall into the proviso exception underlined above. This logic is flawed. The proviso to the workman's compensation exclusion affords coverage for Wild Well's contractual assumption of others' liability incurred only under any workman's compensation or similar law; this is not the situation in this case.

■ Second, although the policy does not define the nature and extent of the "Hold Harmless Agreement," under Texas law, "'hold harmless' means to assume all expenses incident to the defense of any claim and to fully compensate an indemnitee for all loss or expense." *Bank of El Paso v. Powell*, 550 S.W.2d 383, 385 (Tex.Civ.App. 1977). Black's Law Dictionary defines "hold harmless agreement" as an "[a]greement or contract in which one party agrees to hold the other without responsibility for damage or other liability arising out of the transaction involved." Black's Law Dictio-

nary, p. 658 (5th ed. 1979). According to these similar definitions, Wild Well was required to obtain an agreement from Amoco pursuant to which Amoco agreed to hold Wild Well without responsibility for any work which Wild Well was hired to do. Where a "word [used in an insurance] policy has a well-defined and understood meaning, it is not ambiguous." *Standard Fire Ins. Co. v. Griggs*, 567 S.W.2d 60, 63 (Tex. Civ.App.1978, writ ref'd n.r.e.). While such an endorsement may be limited to certain perils, it need not necessarily be limited, but may, as in this case, apply broadly to all types of claims. Illinois Union chose not to include any limiting language in Endorsement No. 2, and Wild Well and Amoco may not force such limitations. Wild Well and Amoco argue that because the endorsement requires Wild Well to obtain agreements "with" instead of "from" Amoco, the agreements are required for some but not all claims. This Court is not persuaded by this argument. The words should be read in the context of the endorsement. *See Ideal Mutual Ins. Co. v. Last Days Evangelical Ass'n*, 783 F.2d 1234 (5th Cir.1986).

Third, Amoco and Wild Well argue that Endorsement No. 2 does not expressly limit the umbrella policy's coverage. However, the endorsement specifically requires Wild Well to obtain "Hold Harmless Agreements" from its customers. The endorsement also states "[n]othing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, or limitations of the policy to which this endorsement is attached *other than as above stated*." Record Excerpts at 24 (emphasis added). This sentence was in bold type and clearly identifies Endorsement No. 2 expressly as a limitation of coverage.

Finally, contrary to the contention of Amoco and Wild Well, that if broadly interpreted Endorsement No. 2 deprives Wild Well of any usefulness of having the umbrella policy, the policy is still useful. For example, the umbrella policy would protect Wild Well from the insolvency of its customers, and would cover claims unrelated to Wild Well's work on oil and gas wells.

Under the terms of the original Amoco–Wild Well work order, Amoco was to indemnify Wild Well for claims such as the claims presently in dispute. However, the later Amoco–Wild Well amendment to the work order partially retracts such indemnity. Thus Wild Well failed to meet the condition for coverage, which was to obtain a hold harmless agreement from Amoco. The district court implicitly determined that the term "Hold Harmless Agreement" as used in the umbrella policy, is not ambiguous. Such a finding was not clearly erroneous, and this Court affirms. The above discussion also pertains to our determination that the interpretation offered by Wild Well and Amoco is not reasonable; the umbrella policy does not cover Wild Well's agreement to indemnify Amoco for claims with respect to Wild Well's employees.

### III. SUMMARY JUDGMENT

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. The moving party is entitled to summary judgment when "the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986), *cert. denied*, 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988). Under Texas law, Amoco and Wild Well have the burden of showing coverage of the loss in question. Amoco and Wild Well have failed to make a showing of coverage sufficient to withstand a summary judgment motion.

Amoco and Wild Well contend that the district court based its grant of summary judgment on the erroneous finding that Wild Well agreed to hold Amoco harmless from *all* claims, rather than only those claims with respect to Wild Well's agents or employees. Their argument is one of strained semantics. In an earlier district court Order recommending additional briefing on Illinois Union's motion for summary judgment which indicated the district

court's belief that Illinois Union would prevail on this motion, the district court explained that the amendment to the Amoco–Wild Well work order "stated that with respect to its *agents and employees,* Wild Well would indemnify and hold harmless Amoco from all claims." Record Excerpts at 13 (emphasis added). Appellants failed to demonstrate that the district court misunderstood the meaning of the amendment to the work order; they likewise fail to persuade this Court.

### IV. CONCLUSION

The district court did not err in granting summary judgment in favor of Illinois Union. The term "hold harmless" is not ambiguous and should therefore be afforded its accepted meaning.

AFFIRMED.