**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

No. 00-20236

_____

IN THE MATTER OF: SIDNEY L. BERGER,

                                                    Debtor.

SIDNEY L. BERGER,

                                                    Appellant,

versus

DANNY M. LANG, SR. and
DANNY M. LANG, JR.,

                                                    Appellees.

_____

Appeal from the United States District Court
for the Southern District of Texas, Houston Division
(H-99-2177)

_____
December 7, 2000

Before HIGGINBOTHAM, WIENER, and DENNIS, Circuit Judges.

PER CURIAM[*]:

Appellant Sidney L. Berger ("Berger"), debtor in bankruptcy, appeals the denial of his bankruptcy discharge because of his fraudulent concealment of assets and willful and malicious conversion of property owned by Appellees, Danny M. Lang, Sr. ("Lang, Sr.") and Danny M. Lang, Jr. ("Lang, Jr."; collectively,

---

[*] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

"the Langs"). We affirm the denial of bankruptcy discharge, finding no error on the part of the bankruptcy court.

## I. FACTS AND PROCEEDINGS

The events leading to this adversary proceeding began in 1989, when Berger, a Houston attorney, was appointed receiver of Regame, Inc., d/b/a the Edward H. Bohlin Company ("Regame"). Appellee Lang, Jr. was president and owner of a one-third interest in Regame, which made western saddlery and accessories of custom-tooled leather ornamented with sterling silver and 18-carat gold. Regame had corporate offices in Houston and a manufacturing plant in Burbank, California. Lang, Jr. worked from the California office, and both he and Lang, Sr. kept items of personal property there, including files, guns, belt buckles, and used clothing and boots. The elder Lang also kept an expensive saddle, the Sterling Silver Indian Head "Bonnell Saddle," at the California office, along with matching gunbelt, trappings and gauntlets.

Before Berger was appointed receiver, Regame ceased operations because of financial problems related to Lang, Jr.'s acrimonious divorce, and the landlord seized the California offices for nonpayment of rent. Berger obtained a $200,000 loan guaranteed by Lang, Jr.'s former in-laws, gained access to the building, and re-started the California operations. Berger did not return the Langs' personal property to them, however, contending that he could not distinguish corporate from personal property and that he "thought it best for a court to determine the rightful ownership of

2

the items."

A 1993 judgment entered after a jury trial in Texas state court ordered Berger to return the Bonnell Saddle to Lang, Sr., conditioned upon his payment to Berger of $6,931 in receiver fees. Berger also was ordered to return Lang, Jr.'s property to him, and Lang, Jr. was ordered to pay Berger $25,000 in receiver fees. Berger's duty to return Lang, Jr.'s property was not, however, made conditional on payment of Berger's receiver fees.[1]

Lang, Sr. paid his fees to Berger and received the saddle, but the stalemate over Lang, Jr.'s fees and property continued.[2] In 1994, the Langs sued Berger for conversion of personal property and won a $125,000 judgment against him, which was affirmed on appeal. That judgment is the basis of the Langs' instant claims against Berger.

In 1996, Berger filed a voluntary petition seeking relief under Chapter 13 of the Bankruptcy Code, later converted to Chapter 7. The Langs filed this adversary proceeding, objecting to any bankruptcy discharge for Berger and specifically to discharge of Berger's judgment debt to them. After a two-day trial, the Bankruptcy Court for the Southern District of Texas denied discharge under Bankruptcy Code §§ 727(a)(2) and (4), and also

---

[1] A turnover order issued two years later did permit Berger to withhold Lang, Jr.'s property until the fees were paid.

[2] Lang, Jr. never has paid Berger the $25,000 in receiver fees.

found that the Langs' judgment was nondischargeable under § 523(a)(6) because the conversion of the Langs' property was willful and malicious.  The district court affirmed, and this appeal followed.

## II.  ANALYSIS

### A.  Standard of Review

We review for clear error the bankruptcy court's findings of fact that have been affirmed by the district court.  We review de novo the bankruptcy court's conclusions of law.[3]

### B.  Fraudulent Concealment

Intent to hinder, delay, or defraud creditors may be inferred from the actions of the debtor, and may be proven by circumstantial evidence.[4]  To prevent discharge for making a false oath under § 727(a)(4)(A),[5] a plaintiff must prove by a preponderance of the

---

[3]  Haber Oil Co. v. Stinehart, 12 F.3d 426, 434 (5th Cir. 1994); HECI Exploration Co. v. Holloway, 862 F.2d 513, 518 (5th Cir. 1988).

[4]  Pavy v. Chastant, 873 F.2d 89, 91 (5th Cir. 1989).

[5]  The provisions of 11 U.S.C. § 727(a) applicable to this case state:

> (a) The court shall grant the debtor a discharge, unless . . .
>     (2) the debtor, with intent to hinder, delay, or defraud a creditor . . . has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed ——
>             (A) property of the debtor, within one year before the date of the filing of the petition; or
>             (B) property of the estate, after the date of the filing of the petition; . . . [or]

4

evidence that (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case.[6]

False oaths sufficient to justify the denial of discharge include "'(1) a false statement or omission in the debtor's schedules or (2) a false statement by the debtor at the examination during the course of the proceedings.'"[7]  We have affirmed as not clearly erroneous a bankruptcy court's finding "that the existence of more than one falsehood, together with [the debtor's] failure to take advantage of the opportunity to clear up all inconsistencies and omissions when he filed his amended schedules, constituted reckless indifference to the truth and, therefore, the requisite intent to deceive."[8]

In this case, after conducting the two-day trial, the bankruptcy court wrote seventeen single-spaced pages of findings and conclusions, frequently drawing on the court's negative assessment of Berger's credibility at trial.  The court detailed

---

(4) the debtor knowingly and fraudulently, in or in connection with the case ——
　　　　(A) made a false oath or account. . . .

[6]  Beaubouef v. Beaubouef, 966 F.2d 174, 178 (5th Cir. 1992).

[7]  Id. (quoting 4 Collier on Bankruptcy ¶ 727.04[1], at 727-59 (15th ed. 1992)).

[8]  Id.

5

several errors and omissions in Berger's bankruptcy schedules and found that Berger had grossly understated the value of his numerous firearms, western collectibles (gunbelts, spurs, belt buckles, etc.), and a diamond ring. In addition, Berger claimed as an exempt homestead a 15.56-acre tract of raw urban land on which there was no dwelling, and on which he apparently never resided. Berger also failed to disclose the $25,000 account receivable from Lang, Jr., and the court found that the schedules misstated the date of liens executed in favor of Berger's mother, which were perfected four days before his bankruptcy filing.[9]

Berger denies that he knowingly and fraudulently misstated his financial position, and disclaims any intent to defraud his creditors. He insists that the discrepancies on his schedules were "inadvertent and unintentional." Berger contends that "[t]he problems in the original schedules were in part a result of simple oversights and misunderstandings by Berger and his first attorney." He also asserts that he "simply made oversights and mistakes in hastily filling out his bankruptcy schedules."

The bankruptcy court found Berger's testimony not credible. "There are too many errors for Debtor not to have noticed, and the errors are obviously willful and fraudulent," the court concluded. The bankruptcy court further noted that, when trial was held three years after Berger filed for bankruptcy, he still had never filed

---

[9] Berger contends the notes and security interests involved merely memorialized debts he already owed his mother.

a full set of correct bankruptcy schedules and financial statements, even though he had replaced his counsel approximately one year earlier.[10]

Berger further argues that the evidence was inadequate to support the bankruptcy court's finding of intent because he was candid and cooperative in dealing with the Bankruptcy Trustee. Specifically, Berger urges that he disclosed the transactions involving his mother and subsequently reversed them, and that the Trustee was aware of the $25,000 receivable from Lang, Jr. from the inception of the bankruptcy proceeding. The bankruptcy court rejected these arguments, however, finding that Berger's cooperation with the Trustee was forced in part by the Langs' disclosures and generally amounted to "too little, too late."

On review, the district court found the bankruptcy court's conclusion that Berger acted with fraudulent intent to hinder his creditors to be supported both by the record and by the bankruptcy court's credibility assessments. The district court found no basis to reverse the bankruptcy court's denial of discharge, and neither do we.

C. Willful and Malicious Conversion

Having affirmed the denial of discharge on grounds of

_____

[10] Berger argues on appeal that his previous lawyer "for some unknown reason" failed to file with the court a set of amended schedules, which were delivered to the Trustee and the Langs. The bankruptcy court points out, however, that even this set of the "missing" schedules (offered to the court by the Langs) was both incomplete and false.

fraudulent concealment, we need not and therefore do not address the bankruptcy court's alternative denial of dischargeability of Berger's debts to the Langs under Bankruptcy Code § 523(a)(6).

### III.  CONCLUSION

Berger has not shown that the bankruptcy court clearly erred in finding that he concealed property and made a false oath in connection with his bankruptcy case.  He presents us the same explanations of his actions that the bankruptcy court weighed and rejected, based in significant part on the court's assessment that Berger lacked credibility.  We will not second-guess the bankruptcy court's credibility determinations on this evidence.  The denial of Berger's discharge in bankruptcy is

AFFIRMED.