# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 16, 2011

No. 11-30088
Summary Calendar

Lyle W. Cayce
Clerk

In the Matter of: JO-ANN FRANCHI; FRANCO FRANCHI,

Debtors

---

RICHARD M. ROBERG; SHARON DOYLE ROBERG,

Appellants

v.

JO-ANN FRANCHI; FRANCO FRANCHI,

Appellees

---

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:08-CV-375

---

Before GARZA, SOUTHWICK, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Richard M. Roberg and Sharon Doyle Roberg (collectively, the "Robergs") appeal the district court's decision that Jo-Ann Franchi and Franco Franchi (collectively, the "Franchis") were entitled to a credit for the sum that the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-30088

Franchis owed to the Robergs under a Non-Execution Agreement entered into by the parties.  We AFFIRM.

## I.  FACTS AND PROCEDURAL HISTORY

The Robergs contracted with Franco International, Inc., d/b/a Colonial Homes ("Franco International"), a company owned by the Franchis, to construct a custom home in Louisiana.  The Robergs decided to pre-pay for the cabinetry and millwork for the home, so they sent a check for $50,000 to a company called Colonial Millworks.  At the time they sent the check, they allegedly did not know that Colonial Millworks was not a separate entity from Franco International.  Although the Robergs instructed that the check was to be deposited into a certificate of deposit or money market account, the check was deposited into the account of John B. Arnold ("Arnold") and Jo-Ann Franchi, and within one week, the check was used by Arnold for purposes other than procuring the cabinets and millwork.

After a series of events led the Robergs to become suspicious of Franco International and the Franchis, the Robergs terminated their contract with Franco International.   The Robergs then sued the Franchis, Franco International, Arnold, and various other parties in Louisiana state court for breach of contract and negligent and intentional acts connected with the construction of their home, and the case proceeded to arbitration.

Before the arbitrator made an award, the Franchis filed for bankruptcy. The Robergs objected to the dischargeability of their debt, arguing that it was not dischargeable under 11 U.S.C. §§ 523(a)(4), which prohibits discharging a debt incurred by fraud, and (a)(6), which relates to willful or malicious injury. After the bankruptcy court denied the Franchis' motion for summary judgment, the Franchis and the Robergs entered into a Consent Judgment for Damages and Non-Dischargeability (the "Consent Judgment") and a Non-Execution Agreement.  The Consent Judgment awarded the Robergs $50,000 plus interest

2

and attorney's fees. Under the Non-Execution Agreement, the Robergs agreed to accept $45,000 in full satisfaction of the Consent Judgment, to be paid over time, if the Franchis complied with the terms of the Non-Execution Agreement. The Non-Execution Agreement contained a provision that noted that the Robergs were seeking recovery of the $50,000 from the Franchis' insurance company—Travelers Insurance Co. ("Travelers") in state court (the "Travelers Case"). Paragraph 13 of the Non-Execution Agreement provided that:

> Should ROBERG be successful in collecting the $50,000.00 which ROBERG paid FRANCHI and/or Colonial Millworks including the specific identity of the sums paid by Travelers as the return of this $50,000.00 to ROBERG, then FRANCHI shall receive a full credit of that sum against this agreement or the Consent Judgment if this agreement becomes null and void . . . .

The Robergs did succeed in obtaining a judgment against Travelers that specifically held, *inter alia*, that the Franchis' insurance policy provided coverage for the $50,000 that the Robergs paid for the cabinetry and millwork and awarding that sum to them in the Travelers Case. However, the *Robergs* filed a motion for a new trial of the judgment in their favor. There is no evidence in the record that Travelers would have appealed the judgment against it.

The Robergs and Travelers agreed to the new trial and then entered into a settlement agreement whereby the Robergs collected approximately $68,000 from Travelers. The settlement agreement, unlike the judgment, did not specify that the $50,000 for the cabinets was part of the $68,000 in consideration paid, but it did contain a full release of all claims.

The Franchis, upon learning about the original Travelers Case judgment, stopped payment pursuant to the Non-Execution Agreement, contending that their obligations ceased after the Robergs obtained a judgment against Travelers. The Robergs filed a motion to re-open the adversary proceeding in bankruptcy court and enforce the Consent Judgment, as they contended that the

No. 11-30088

Franchis breached the Non-Execution Agreement by ceasing payment before the Robergs collected the $50,000 from Travelers. Additionally, the Robergs argued that the Franchis were not entitled to a credit for the funds collected from Travelers because the settlement agreement in the Travelers Case did not specify that the $68,000 payment was for the *specific* $50,000 that the Robergs paid to Colonial Millworks for the cabinets; therefore, they contended, the terms of Paragraph 13 of the Non-Execution Agreement were not satisfied.

The bankruptcy court held that the Franchis were entitled to a credit for the payment from Travelers because the wording of the Non-Execution Agreement was ambiguous and it was to be construed against the Robergs, who admitted that they drafted and insisted upon the inclusion of Paragraph 13. The district court affirmed, and the Robergs appealed.[1]

## II. STANDARD OF REVIEW AND JURISDICTION

The bankruptcy court had jurisdiction over the Robergs' claim that the Franchis' debt was not dischargeable pursuant to 28 U.S.C. §§ 157 and 1334. The district court had jurisdiction to hear the Robergs' appeal under 28 U.S.C. § 158(a), and we have jurisdiction under 28 U.S.C. § 158(d).

We review the bankruptcy court's factual findings for clear error and its decisions on legal issues de novo. *In re Haber Oil Co.*, 12 F.3d 426, 434 (5th Cir. 1994). We may affirm on any basis supported by the record. *Teague v. Quarterman*, 482 F.3d 769, 773 (5th Cir. 2007).

## III. DISCUSSION

The Robergs contend that the Franchis are not entitled to a credit for the money the Robergs received from Travelers, as provided by Paragraph 13 of the

---

[1] We note that although the Robergs' appeal was not timely filed, they filed a motion to extend the time for their appeal within the time prescribed by Federal Rule of Appellate Procedure 4 and gave notice to the Franchis. The district court granted the Robergs' motion for an extension of time and their motion for leave to file a notice of appeal. Therefore, we may consider this appeal. *See* FED. R. APP. P. 4(a)(5).

No. 11-30088

Non-Execution Agreement, because the settlement agreement between the Robergs and Travelers did not specify which part of Travelers' payment to the Robergs was intended to compensate the Robergs for the $50,000 they spent on cabinetry and millwork. They contend that the language of Paragraph 13 requires any award from Travelers to explicitly mention the $50,000 for the cabinetry and millwork in order for the Franchis to receive a credit.

The Robergs admitted that they drafted Paragraph 13 in their favor, and they now argue that because the *Travelers Case settlement agreement*—an agreement that did not involve the Franchis—did not specify that the consideration received was for the $50,000 for the cabinetry and millwork, the Franchis should not receive a credit under Paragraph 13. In the settlement agreement, the Robergs agreed to release Travelers from liability for all claims, including those brought in the state court proceeding. As the Robergs sought—and originally recovered a judgment for—the $50,000 for the cabinetry and millwork in the Travelers Case, the settlement agreement clearly included a settlement of the Robergs' claim for the $50,000 against Travelers.

Under the particular circumstances here and the language of these agreements, we agree with the bankruptcy court's reasoning that "money is fungible," and the Robergs should not be allowed to take advantage of the lack of specificity in a settlement agreement between themselves and a third party to deny the Franchis a credit under Paragraph 13. Indeed, a party "is not allowed to take advantage of a situation of his own making," *Wegman v. Cent. Transmission, Inc.*, 499 So. 2d 436, 447 (La. Ct. App. 1986).[2] AFFIRMED.

---

[2] We note that under Louisiana law, "[a] condition is regarded as fulfilled when it is not fulfilled because of the fault of a party with an interest contrary to the fulfillment." LA. CIV. CODE ANN. art. 1772 (2008); *see also Bass, Ltd. v. Gerald*, 954 So. 2d 243, 247 (La. Ct. App. 2007). The Robergs interfered with the satisfaction of the terms of Paragraph 13 by failing to collect on the judgment that complied with Paragraph 13 on its face.